```
 1   J.M. IRIGOYEN #177626
     Attorney at Law
 2   J.M. IRIGOYEN LAW CORPORATION
     2131 Amador
 3   Fresno, CA 93721

 4   559.233.3333

 5

     Attorney for Defendant
 6   ABDULLA KASSEM MUTHANA

 7

 8                IN THE UNITED STATES DISTRICT COURT

 9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10
     UNITED STATES OF AMERICA,  )   Case No: 06-cr-00321-OWW
11                              )
           Plaintiff,           )   DEFENDANT'S DETENTION
12                              )   RECONSIDERATION FACTUAL
           vs.                  )   AND LEGAL PROFFER
13                              )
     ABDULLA KASSEM MUTHANA,    )   Date: 4-30-07
14                              )   Time: 1:30 p.m.
           Defendant.           )   Room: 3
15   _____)   Honorable: Oliver W. Wanger
```

**STATEMENT OF FACTS**

**1.  Nature and Charge Circumstances**

For an 8% check cashing fee Defendant was lured into cashing $209,130.00 worth of police-manufactured EDD checks falsely represented as proceeds of mail fraud and is now charged with 5 counts of § 1956(a)(3).[1]  His maximum guideline exposure[2] is 27-31 months.[3]

**2.  Weight of the Evidence**

The evidence weighs heavily to an admittedly government-

---

[1]  The indictment contains no criminal forfeiture charges nor have civil forfeiture proceedings been filed.

[2]  This calculation is submitted without prejudice.

[3]  BOL 18 (2S1.1, 2B1.1(a)(2)(1)(G), Criminal History Category I).

1

fabricated EDD mail fraud crime, with 324 small checks Defendant cashed and deposited into his grocery store bank account for a $16,900.00 profit,[4] wholly manufactured to prosecute Defendant.[5]

### 3. Defendant's History and Characteristics

Defendant has been a legal resident for 17 out of his 40 years with a citizenship petition pending. Sixteen of those years he has lived at his present address. One of his two brothers lives in the United States while another in Saudi Arabia. His father, 5 sisters, ex-wife and 2 minor children live in Yemen where he was born. He visited his family in Yemen 6 months in 1993, 3 months in 2000, and 1 month in 2003. He also went to Morocco 2 months in 2005 to get married.

Defendant has owned the Ranchito Market since 1991 and bought a second market this year. From these businesses he earns $6,000.00 per month, $1,500.00 to $2,000.00 from his international transaction funds transfer side business, and $1,700.00 monthly on residential income.

Defendant does not use drugs, consumes alcohol occasionally, and has only a ten-year old misdemeanor conviction for providing tobacco to a minor.

### 4. Expert Assessment

Dr. Blak considers Defendant a low flight risk. (J. M. Irigoyen's dcl., ¶ 3).

---

[4] Indictment, ¶ 5.

[5] The Indictment is therefore arguably dismissible pre-trial for outrageous governmental conduct (see, e.g. *United States v. Bogart*, 783 F.2d 1428, 1438 (9th Cir. 1986); *United States v. So*, 755 F.2d 1350, 1353-54 (9th Cir. 1985), or defendable at trial based on entrapment (*id*., at 1354).

2

**5.   Release Conditions**

Defendant promises to make all Court appearances and comply with any release conditions imposed by the Court including (1) passport surrender, (2) abode or travel restrictions,(3) custody of submission to his landlord Abdu Ahmed as third party custodian, (4) probation and/or third party custodian reporting, (5) employment maintenance, and (6) any other conditions the Court deems necessary.  (Abdulla Kassem Muthana's dcl. in support hereof, ¶ 2).

Defendant's landlord is willing to serve as third party custodian and post his residence with a $100,000.00 equity and available equity in his $300,000.00 commercial property.

Defendant is also willing to post a $500,000.00 property bond secured by his real property as necessary.  (Abdulla Kassem Muthana's dcl., ¶ 2).

**LEGAL CONTENTIONS**

A.   DEFENDANT IS NOT A FLIGHT RISK

As Amorphous flight risk is, it must be applied (18 U.S.C. § 3142(f)(2)(A)). Guidelineless, the assessing process is necessarily speculative and partially subjective.  And while this Court is undoubtedly experienced with it, Dr. Blak's undisputed expert opinion that Defendant is a low flight risk speaks mountains.  Surely, it is still a guess, but an expert one, made where pre-trial detention should be ordered "only in rare circumstances" (*Sellers v. United States*,___ U.S.___, 21 L.Ed.64,___, 89 S.Ct. 36, 38 (1968) (Black, J., in chambers); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985)), "doubts regarding the propriety

of release should be resolved in [Defendant's favor]" (*Herzog v. United States*, ___ U.S. ___, ___, 99 L.Ed. 1299, 75 S.Ct. 349, 351 (1955); *United States v. McGill*, 604 F.2d 1252, 1255 (9th Cir. 1979), cert. denied, 444 U.S. 1035, 62 L.Ed.2d 671, 100 S.Ct. 708 (1980)), and guarantees against flight are not required (*United States v. Himler*, 797 F.2d 156 (3rd Cir. 1986) (opportunity to flea insufficient to justify detention); *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992).

Defendant's 18 BOL adjusted downward 3 levels, if he enters an *Alford*[6] plea, produces an estimated guideline sentence of only 18 months. But even if Defendant cannot get the indictment dismissed for outrageous governmental conduct (see, e.g. *United States v. Bogart*, 783 F.2d 1428; *United States v. So*, 755 F.2d 1350), his entrapment defense (*id*.) fails at trial, and his several already strategized legal and factual defenses (J. M. Irigoyen's dcl., ¶ 2) also failed, his real guideline exposure is only 27 months.

No established non-felon with a U.S. citizenship petition pending, $120,000.00 annual income, who has lived trying to immigrate his wife legally in this country the vast majority of his adult life, is going to consider fleeing. On the contrary, his insistence that he was at least entrapped (Abdulla Kassem Muthana's dcl., ¶ 5), and that his family depends entirely on his established U.S. income at risk if convicted and deported, is a greater incentive for him to

---

[6] *North Carolina v. Alford*, 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970).

4

1    appear and fight to prevent deportation.

2         Besides, deportation is far from automatic (see, e.g. *Kim
3    v. Ziglar*, 276 F.3d 523, 531 -32 (9th Cir. 2002)).  The
4    government has neither initiated deportation (see, e.g. *United
5    States v. Jamal*, 326 F.Supp.2d 1006, 1008 (Dist. of Ariz.
6    2003) nor timely detained Defendant as a non-citizen under 18
7    U.S.C. § 3142 (b)(1)(B)(see, *United States v. Xulman*, 84 F.3d
8    441, 444 (D.C. Cir. 1996) ("When the government did not move
9    [] for temporary detention under § 3142(d), it does not seem
10   legitimate for it to now introduce the specter of a possible
11   deportation through the back door as a principal reason for
12   detention.").

13        Indeed, even if Defendant is convicted, as lawful
14   resident he can still be released pending deportation if he
15   has a substantial argument against it.  See, *Tigani v. Willis*,
16   430 F.3d 1241, 1247-48 (9th Cir. 2005)(*Tashima*, C.J.,
17   Concurring).  Nor is nationality alone a ground to detain
18   Defendant before the hen hatches (see, *United States v.
19   Motamedi*, 767 F.2d at 408) ("alienage, upon which the District
20   Court also placed much weight, may be taken into account, but
21   it does not point conclusively to a determination that
22   Motamedi poses a serious risk of flight.").

23        The forfeiture specter basis of Defendant's detention is
24   even more remote because it is neither factually nor legally
25   supported.  Unlike *United States v. Gentry*, 455 F. Supp.2d
26   1018 (D.C. Ariz. 2006) where both criminal and civil
27   proceedings were filed, nothing like that has, or can occur,
28   in this case and should therefore be ignored.

While the weight of the evidence is the least important pre-trial detention factor, Motamedi, 767 F.2d at 1408, the opposite should be true where a conviction likelihood is poor. (See, e.g. United States v. Chen, 820 F.Supp.2d at 1211). Defense counsel's good faith case assessment as triable with at least a 50% defense verdict chance should not be ignored in assessing Defendant's need to appear and aggressively defend.

Lastly, Motamedi itself substantially supports Defendant's contention that he is not a flight risk. Mr. Motamedi, like Defendant, was a foreign citizen with permanent residency, no criminal record, history of alcohol or drug abuse, and had complied with all previous Court orders. Despite his 33-year sentence exposure the Appeals Court reversed his detention in light of a tendered $750,000.00 residence property bond by his parents and the numerous family and community ties. Defendant is weak in community ties, but his sentence exposure is minimal compared to Mr. Motamedi's and other decade-long-plus sentence cases where substantial exposure weighed against defendants' pretrial release (see, e.g. United States v. Gentry, 455 F.Supp.2d 1018 (292 months); United States v. Jamal, 326 F.Supp.2d at 1008 (14-17 years).

B.   REAPPEARANCE ASSURANCE CONDITIONS

Because flight opportunity will not alone justify detention (United States v. Himler, 797 F.2d at 162) and reappearance guarantees are not required (see, United States v. Chen, 820 F.Supp. at 1208), Defendant's tendered ½ million

dollar property bonds secured by his and his landlord's residence and business, third party custodian, passport surrender, abode and travel restrictions, reporting, employment maintenance, and conditions compliance proffer (see, e.g. *United States v. Xulman*, 84 F.3d at 443) should exceed the least restricted conditions that will reasonably assure his appearance (*United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Detention is only permitted if no combination of conditions can reasonably assure Defendant's appearance. 18 U.S.C. § 3142.

**CONCLUSION**

Because Defendant is not a flight risk and there are release conditions reasonably assuring his appearance, the detention order should be revoked and his release ordered herewith.

DATED: April 23, 2007

Respectfully yours,

J. M. IRIGOYEN LAW CORPORATION

by: s/J. M. Irigoyen,
    J. M. Irigoyen, Esq.
    Attorney for Defendant
    Abdulla Kassem Muthana