# BAR PSYCHOLOGICAL
## RICHARD A. BLAK, Ph.D.
### LICENSED PSYCHOLOGIST, PSY7172

7341 N. First, Suite 110  
Fresno, California 93720

Tel. (559) 431-8893  
Fax. (559) 431-8894

April 6, 2007

J.M. Irigoyen, Esq.  
2131 Amador Street  
Fresno, CA 93721

RE: ABDULLA KASSEM MUTHANA  
Case No.: 06-cr-00321-OWW  
BD: 05-15-63  
SS: 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

Dear Mr. Irigoyen:

This will constitute a Psychological Evaluation Report on the above captioned individual as requested by your office. Please be advised this evaluation was conducted at the Fresno North Annex Jail on 04-05-07, starting at approximately 8:45 a.m. and concluding at 10:55 a.m. Mr. Muthana is an Arabic speaker and therefore the evaluation was conducted with the able assistance of John Paul Youel, Interpreter.

### DEFENDANT IDENTIFICATION:

Abdulla Kassem Muthana is a 43-year-old, married Yemenese man. Before his detention, he ran a business and lived in Corcoran, California where he has been for approximately 16 years. Mr. Muthana was born in Yemen. His father is aged between 70 and 80. The defendant's mother died at approximately age 50 of some undetermined sickness in 1984. Mr. Muthana has an older brother, age 50, who is a handyman in Yemen. He has another brother, age 39, who lives is Saudi Arabia, he also is a handyman. There is another brother, age 34, who lives in Tulare, California and was working at Mr. Muthana's second business in rural Tulare County. Mr. Muthana has four sisters who live in Yemen and are married with families.

Mr. Muthana is in his second marriage. His first marriage was arranged when he was age 17, in 1990. His wife at that time was age 23. The union produced two sons, aged 16 and 13. They live in Yemen with their mother. This marriage lasted for 15 years. Mr. Muthana pays child support that is not court ordered. It is further noted that Mr. Muthana wishes to sponsor his sons and have them come and live in the United States.

PSYCHOLOGICAL EVALUATION AND REPORT
RE: ABDULLA KASSEM MUTHANA
Page Two
04-05-07

Mr. Muthana married his second wife, a 24-year-old, Moroccan who continues to live in Morocco. Mr. Muthana was in the process of completing paperwork for U.S. Citizenship and had taken the test and he was working on his papers.

Mr. Muthana describes his childhood as a serious time in his life where he decided he wanted to be a "good man" and help other people and find a purposeful life or career. He grew up in a village atmosphere. He indicates he has the equivalent of a high school education.

When questioned about his motivation to come to the United States, he indicated that he wished to better himself and feels the U.S. is a land of opportunity which is obviously a common theme for immigrants to this country. He had heard from other individuals that he knew from Yemen that there were Yemenese individuals living in central California. He relocated to central California after landing in the Port of Entry in New York City. He relocated in Fresno where he worked for five months for a Yemenese grocery owner. This store was on Jensen Street in Fresno. He worked everyday of the week starting at 0800 hours to 1900 hours. He was paid $700.00 a month which included living quarters situated at the business and his food. Eventually, he was able to develop some credit and he was able to borrow $28,000 which enabled him to start his own grocery store in Corcoran, California. He then rented a second facility. At his own businesses, he began his workday at 0530 hours and worked routinely until 2200 hours each day. He had an employee at his first store in Corcoran, a 47-year-old, Yemenese man for whom Mr. Muthana kept appropriate records, for example, registered with EDD, he had workmen's comp insurance premiums, and withheld appropriate taxes and the like. As noted above, Mr. Muthana had a second store which was staffed by his younger brother. In addition to these two grocery stores, Mr. Muthana was licensed broker relative to sending monies from other Yemenese folks to their families in Yemen.

Mr. Muthana denies any negative contacts within the community. When asked specifically about police contact, he indicated that he did nothing wrong to warrant attention from law enforcement. He does acknowledge that there was a violation of providing tobacco products to a minor but indicates this was actually conducted by his employee, although he was identified as the responsible party. He went further to say that he had contact with a peace officer who was a Deputy Sheriff with Kings County by the name of Terry Mordock, who moved on to a Superior Court Bailiff position. He knew this gentleman for approximately 10 years.

Mr. Muthana indicated he got a California Driver's License in 1991. He acknowledged one basic speed violation in Tulare County cited by CHP on Kansas Road, a major conduit between Hanford and Tulare. He recalls driving 65/70 in the 55 MPH speed zone. He paid the fine. He denies any MVA.

PSYCHOLOGICAL EVALUATION AND REPORT
RE: ABDULLA KASSEM MUTHANA
Page Three
04-05-07

In terms of his general health, he indicates that he is a healthy man, but was diagnosed with hypertension and would consult with a physician in Delano. Upon questioning, he says that he was checked upon booking into the Fresno Jail and was told that his "blood pressure was okay. He is not taking any medication at this time.

Mr. Muthana indicates he has not used any controlled substances including marijuana, cocaine, heroin, or hallucinogenics. He does acknowledge that he drinks 2-3 lite beers per day but denies that he ever became inebriated or had blackouts when drinking.

## MENTAL STATUS EXAMINATION:

Mr. Muthana was seen in the interview area on the 4th floor of the Fresno North Annex Jail. He was clad in jail uniform. He presents with a neatly trimmed hair cut, and trimmed mustache. He is 5' 4" and weighs 145 lbs, and looks his chronological age. He complains that his appetite is not particularly robust as the food they serve in jail is quite different from his cultural conditioning. He engaged relatively easily providing good eye contact, and a healthy handshake. He appeared to be somewhat guarded but this is appreciated as a cultural issue more than an attempt to be evasive relative to answering questions. His answers did reflect somewhat of a "suspicious" attitude. His mood was euthymic and his affect was full range. There is not indication of any major thought or mood disorders.

At the end of the interview, he wished to speak to the undersigned in a manner such as the following, "I want to speak from my heart...(noted at this time he became emotional and teary eyed)...he went on to say that he never had any bad feelings for this government (relating to U.S.), he went on to say that he would fight for the rights of the government and he never had any inclinations or attitudes that would be associated with any terrorist type proclivities"...it was interpreted by the undersigned that he is quite sensitive to the fact that he is from a part of the world where certain world events have underscored feelings of hostilities shared by some members of the Middle East community towards Western countries, particularly the United States.

## TEST RESULTS:

As part of this evaluation, an objective psychometric measure was administered. This was administered via interpreter as the Millon Clinical Multiaxial Inventory, III is not published in Arabic. It is the undersigned's opinion that the presentation in translation was adequate relative to measuring certain personality dynamics of Mr. Muthana. His approach to the instrument reflected a certain degree of presenting himself in a positive manner, which is not highly unusual in these circumstances. The results suggest that Mr. Muthana is experiencing a psychological adjustment

PSYCHOLOGICAL EVALUATION AND REPORT
RE: ABDULLA KASSEM MUTHANA
Page Four
04-05-07

issue of mild severity. The results also suggest that at times he can be characterized as being somewhat Avoidant in his interactions with others and that he may have some suspicious attitudes towards others. Given his current situation, this does not seem to be particularly atypical. The profile of this man suggests he seeks to flatten his emotions and desires and to desensitize his fearful mistrust of others. His answers suggest a general social sensitivity and a apprehension that he may violate social subtleties and so may keep somewhat of an emotional distance from others. He therefore becomes somewhat concerned with the possibility of social rebuff and continues to anticipate potential rejection. This would not be unusual for a man who in many ways comes from a part of the world that is associated with acrimonious attitudes towards the U.S. The results also indicated that it would be very unusual for this gentleman to evidence any sign competitiveness or over indulgences in initiative. He is not likely to act out or display resentments openly or even to pursue the lighter side of life. He tends to suppress many of his moods and focus on industry. In many ways, he assumes a passive role and may be willing to submit to the demands of others, particularly if he sees them in a role of authority. As a consequence, he shows some degree of withdrawal in terms of assuming a peripheral social, vocational role.

The results also indicate, that in spite of his cautiousness relative to social interplay, he does engage others anticipating a positive reciprocity. It is noted that in his chosen occupation, he would necessarily come in contact with numerous individuals on a day to day basis and have to engage with them since he is in a commerce business.

The results do not suggest that he would not be characterized as an impulsive individual, in fact to the contrary. He does not present himself as a particularly angry or troubled gentleman. He may be cautious in relating to others, he is not so inhibited to the point where he would not be able to sustain a relationship with others, whether it be personal, professional, or social interaction.

**FINDINGS:**

Mental status examination, which included a history taking and the potential identification of any psychopathological tendencies, as well as psychometric test data, as reflected by the MCMI instrument indicates that Mr. Muthana has a motivation to succeed and has adopted an enterprising set of values. His capacity to formulate a work ethic and discipline is quite clear from history. That is to say, he works many hours each day to sustain two businesses and he began this career path after immigrating to the U.S. and working for another grocery owner for five months everyday of the week. He continues this self-disciplined approach to his current endeavors and he appears to have abided by all relevant statutes in law relative to his business. (Current allegations not withstanding). Psychologically, Mr. Muthana appears to be able to engage other in spite of the fact that he might be somewhat apprehensive about fitting into the fabric of the central California community. He has

PSYCHOLOGICAL EVALUATION AND REPORT
RE: ABDULLA KASSEM MUTHANA
Page Five
04-05-07

been able to develop relatively close relationships; having been married for 15-years and when his wife apparently refused to relocated to the U.S., he felt behooved to continue to follow his own dreams and wishes to reunite with his sons upon appropriate development of citizenship and the like. He has moved into a second marriage with a young woman he was able to meet through the Internet and traveled to Morocco to wed her and has since visited her. He has been advised it would be wiser for him to obtain his citizenship before he attempts to bring his wife to his home in California.

These life events are noted to illustrate his capacity to form attachments to others. It is clear from his history that he has certainly attached himself to central California. It is clear that he has attached himself to an identity of a Grocer/Store Owner. It is clear that he has been "successful", having built his business to the point where he generates over $100,000 a year. These are endeavors that would be consistent with an individual that is focused and disciplined and has the capacity to value industry and hard work. These tendencies would be quite inconsistent with an individual who would flee from his responsibilities, whether they be legal, social, or personal. His whole identity is essentially wrapped up in terms of his position within the community as being a small business owner. In fact he owes all his success whether it be material or otherwise to his identity as a shop owner. It would be inconsistent for a man of this temperament and personality dynamic to literally flee from his own identity.

The Millon supports the notion that he does not suffer from a personality disorder and he has no other signs of impulsivity. He is a moderate consumer of alcohol. He does not have a compulsive gambling problem. In spite of his long hours of work, he does find time to socialize with selected peers. In interview, he appeared to be appropriate in regards to his social interaction with the undersigned and the interpreter. These again are signs of someone who is not likely to flee from a responsibility.

Taking all data considered, and reasonable psychological certainty that Mr. Muthana is a low flight risk in regards to the legal matters before him.

Respectfully Submitted,

Richard A. Blak, Ph.D.

RAB/cz