McGREGOR W. SCOTT
United States Attorney
STANLEY A. BOONE
Assistant U.S. Attorney
4401 Federal Building
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ABDULLA KASEM AHMED MUTHANA,<br><br>    Defendant. | 01: 06-CR-00321 OWW<br><br>MEMORANDUM OF PLEA AGREEMENT PURSUANT TO RULE 11(c) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE<br><br>Date: To Be Determined<br>Time: To Be Determined |

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United States of America, by and through McGregor W. Scott, the United States Attorney for the Eastern District of California, and Assistant United States Attorney Stanley A. Boone, and Defendant, Abdulla Kasem Ahmed Muthana, and his attorney, J.M. Irigoyen, have agreed as follows:

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United States of America, by and through McGregor W. Scott, the United States Attorney for the Eastern District of California, and Assistant United States Attorney Stanley A. Boone, and Defendant, Abdulla Kasem Ahmed Muthana, and his attorney, J.M. Irigoyen, have agreed as follows:

1

1. <u>Charges</u>.

The defendant acknowledges that he has been charged in a six count superseding information as follows:

Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(3)(six counts); and

Criminal Forfeiture Allegation, in violation of Title 18, United States Code, Section 982(a)(1).

2. <u>Nature, Elements and Possible Defenses</u>.

The defendant has read the charges against him contained in the superseding information, and those charges have been fully explained to him by his attorney. Further, the defendant fully understands the nature and elements of the crimes in Counts One through Six of the superseding information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

<u>COUNTS ONE THROUGH SIX</u>:

The elements of the crime of Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(3), are:

First, the defendant conducted a financial transaction which affected interstate commerce;

Second, The financial transaction involved money which was represented to the defendant by law enforcement or a person acting at the direction of law enforcement to be proceeds of a specified unlawful activity, to wit: mail fraud; and

Third, the defendant conducted the financial transaction with the intent to promote the carrying on of the specified unlawful activity.

Case 1:06-cr-00321-OWW   Document 32   Filed 11/15/07   Page 3 of 16

3.  <u>Agreements by the Defendant</u>.

(a)  Defendant agrees that this plea agreement shall be filed with the court and become a part of the record of the case.

(b)  Defendant agrees to enter a plea of guilty to Counts One through Six of the superseding information which charges him with Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(3).

(c)  Defendant acknowledges that under the United States Constitution that he is entitled to be indicted by a grand jury on the charges to which he is pleading guilty and that pursuant to Fed.R.Crim.P. 7(b) he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the superseding information.

(d)  Defendant understands and agrees that he will not be allowed to withdraw his plea should the Court fail to follow the government's sentencing recommendations.

(e)  Defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction and sentence.  This waiver of appeal includes, but is not limited to, an express waiver of defendant's right to appeal his plea, conviction and sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, and defendant further agrees not to contest his plea, conviction and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255.

(f)  Defendant further acknowledges that his plea of guilty

3

is voluntary and that no force, threats, promises or representations have been made to anybody, nor agreement reached, other than those set forth expressly in this agreement, to induce the defendant to plead guilty.

(g) Defendant agrees that his base offense level for Money Laundering is eight (8) pursuant to Section 2S1.1(a)(2) of the United States Sentencing Commission Guidelines Manual (2006 Edition), plus twelve (12) levels corresponding to the value of the laundered funds, which was more than $200,000 but less than $400,000 (§ 2S1.1(a)(2) and § 2B1.1(b)(1)(G)). Defendant also agrees that his offense level is increased by two (2) additional levels for a offense under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)).

(h) Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

(i) Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution as ordered by the court to the United States and other victim affected by this offense.

(j) The defendant understands that the Court must consult

4

the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005)), and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

(k) Defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1). Those assets include, but are not limited to, the following:

    1.    Approximately $70,265.38 in U.S. Currency seized from Bank of the West Account Number XXX-XX5970 held in the name of Abdulla Q. Ahmed DBA, Ranchito Market;

5

2. Approximately 161 Miscellaneous Third-Party Checks valued at $47,712.13 in U.S. Currency and 3 Western Union Money Orders valued at $1,680.00 in U.S. Currency, totaling $49,392.13 in U.S. Currency;

3. Approximately $10,729.73 in U.S. Currency seized from Bank of the West Account Number XXX-XX0633 held in the name of Abdulla Q. Ahmed DBA, Ranchito Market;

4. Approximately $2,906.86 in U.S. Currency seized from Bank of the West Account Number XXX-XX3710 held in the name of Abdulla Q. Ahmed DBA, Ranchito Market Lottery Account;

5. Approximately $1,717.96 in U.S. Currency seized from Bank of the West Account Number XXX-XX1633 held in the name of Abdulla Q. Ahmed, DBA, Abdulla Ranchito Market;

6. Approximately $249.56 in U.S. Currency seized from Bank of the West Account Number XXX-XX7524 held in the name of Abdulla Q. Ahmed, DBA, Abdulla's International Transfer;

7. Approximately $378.01 in U.S. Currency seized from Bank of the West Account Number XXX-XX2456 held in the name of Abdulla Q. Ahmed, DBA, Abdulla's International Transfer;

8. Approximately $81,933.44 in U.S. Currency seized from 2749 Whitley - Ranchito Market #1, in Corcoran, California; and

9. Approximately $2,733.00 in U.S. Currency seized from 2838 Waukena, in Tulare, California.

Defendant agrees that the listed assets constitute property involved in violations of 18 U.S.C. § 1956(a)(3) or is property traceable to such property.

Defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. Defendant agrees not to file a claim to any of the listed property in any

6

civil proceeding, administrative or judicial, which may be initiated. Defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant waives the notice provisions of Fed. R. Crim. P. 7(c)(2) & 32.2(a), waives oral pronouncement of forfeiture at the time of sentencing and any defects in such pronouncement that pertain to forfeiture, and waives any defenses to forfeiture, including any defense predicated on the Ex Post Facto, Double Jeopardy, and Excessive Fines Clauses of the United States Constitution. The defendant knowingly and voluntarily waives any right to jury trial in any criminal or civil forfeiture proceeding.

4.   <u>Agreements by the Government</u>.

(a)   The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in Section 3E1.1 of the United States Sentencing Commission Guidelines Manual.

(b)   The government agrees that the defendant's base offense level for Money Laundering is eight (8) pursuant to Section 2S1.1(a)(2) of the United States Sentencing Commission Guidelines Manual (2006 Edition), plus twelve (12) levels for the value of the laundered funds, which was more than $200,000 but less than

7

$400,000 (§ 2S1.1(a)(2) and § 2B1.1(b)(1)(G)) plus two (2) additional levels for a offense under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)).

(c)  In consideration for the defendant's agreements in this plea agreement, the government agrees to not seek any other additional enhancements in the defendant's offense level under either Chapter Two and/or Three of the United States Sentencing Guidelines.

(d)  The government agrees to not seek a sentence higher than the mid-point of the applicable guideline range.

(e)  The defendant acknowledges and understands that the government makes no other representations to him regarding fines, his criminal history or criminal history points under Chapter Four of the United States Sentencing Guidelines apply and defendant understands that the government is free to comment and to make recommendations to the court and the probation office regarding those matters.

5.   **Factual Basis**.

Defendant will plead guilty because he is in fact guilty of the crimes set forth in Counts One through Six of the superseding information.  Defendant also agrees that the following are the facts of this case, although he acknowledges that, as to other facts, the parties may disagree:

**Count One:**
On September 28, 2005, a State of California Department of Justice agent, acting in an undercover capacity (UCA), presented the defendant with fifty-eight (58) unemployment insurance checks from the Employment

Development Department (EDD), totaling $36,984.00. The UCA represented these checks to be, and which the defendant believed to be, the proceeds of a mail fraud scheme involving unemployment insurance fraud in violation of federal law. The defendant agreed to cash the checks for a fee of $50.00 per check. These checks were then cashed by the defendant in a financial institution which was federally insured institution whose activities affected interstate and foreign commerce. The defendant deposited these 58 checks over a number of days, as follows: September 29, 2005, 14 checks; September 30, 2005, 12 checks; October 3, 2005, 16 checks; October 5, 2005, 8 checks; October 7, 2005, 4 checks; and October 11, 2005, 4 checks.

**Count Two:**
On November 16, 2005, a confidential informant provided the defendant with a second batch of one hundred and eight (108) unemployment insurance checks, totaling $69,980.00. The defendant again agreed to cash the checks for a fee of $50.00 per check and subsequently cashed them through a series of deposits into the Ranchito Market business account. The defendant believed, based on representations by the informant, that these checks were the proceeds of a mail fraud scheme involving unemployment insurance fraud. The defendant then deposited these 58 checks over a number of days, as follows: November 17, 2005, 20 checks; November 21, 2005, 25 checks; November 23, 2005, 8 checks; November 25, 2005, 22 checks; November 28, 2005, 15 checks; December 1, 2005, 10 checks; and December 2, 2005, 8 checks.

**Count Three:**
On December 9, 2005, the confidential informant provided the defendant with the third batch of 84 unemployment insurance checks, totaling $53,430.00. The defendant agreed to continue to cash the checks for a fee of $50.00 per check and subsequently cashed them through a series of deposits into the Ranchito market business account. The defendant believed, based on representations by the informant, that these checks were proceeds of a mail fraud scheme involving unemployment insurance fraud. The defendant then deposited the 69 of the 84 checks over a number of days: December 10, 2005, 1 check; December 12, 2005, 10 checks; December 14, 2005, 11 checks; December 16, 2005, 10 checks; December 19, 2005, 19 checks; and December 22 2005, 13 checks.

**Count Four:**
On December 22, 2005, the confidential informant provided the defendant with the fourth and final batch of 74 EDD checks, totaling $48,736.00. The defendant agreed to cash the checks for an increased fee of $60.00 per check. The

defendant believed, based on representations by the informant, that these checks were proceeds of a mail fraud scheme involving unemployment insurance fraud. The defendant then deposited 89 checks outstanding checks (15 from third batch and 74 checks from fourth batch) over a number of days: December 23, 2005, 10 checks; December 27, 2005, 19 checks; December 30, 2005, 20 checks; January 3, 2006, 20 checks; January 5, 2006, 10 checks; January 8, 2006, 1 check; and January 9, 2006, 9 checks.

On January 12, 2006, Fresno JTTF coordinated a consensually monitored meeting between the defendant, the CW and the UCA to recover the balance of the check transaction. This was the second and final meeting between the defendant and the UCA regarding the EDD undercover operation. During the meeting, the defendant provided the UCA with $44,296.00 in cash and kept $4,440.00 as his fee for cashing the checks.

Between September 28, 2005, and January 12, 2006, Muthana received a total of 324 EDD checks with a face value totaling $209,130.00 from a law enforcement officer and a person acting at the direction, and with the approval of a law enforcement officer. For the service of exchanging cash for these checks, the defendant received a total payment of $16, 940.00.

**Count Five:**
On November 11, 2006, a joint undercover operation between the Fresno and Buffalo JTTF's and the defendant took place at the Piccadilly Inn, on McKinley Avenue in Fresno, California. During the meeting, an Immigration and Customs Enforcement undercover agent (ICE-UCA) and an ICE confidential informant (ICE-CW) represented to the defendant that the proceeds they were giving him were the result of illegal activity in the form of the sale of counterfeit cigarettes, the sale a counterfeit goods, and the sale of stolen property, which violated 18 U.S.C. §§ 2314, 2315 and 2342(a). The ICE-UCA and ICE-CW were sent out to California to meet defendant Muthana by Subhi, a resident of the Buffalo area, also known as Yehia Ali Ahmed Alomari, in order to conduct the series of financial transactions.

At this meeting, the defendant took possession of $60,000.00 and agreed to transfer the money for a 6% fee. The defendant returned to his business/residence, located at 2749 Whitley Avenue, Corcoran, California. The defendant performed a series of financial transactions in order to transfer the monies overseas to a government controlled bank account in Bahrain. On or about November 22, 2006, a deposit was received in the ICE UC bank account in Bahrain from the defendant in the amount of $24,988.00. On or about

10

November 28, 2006, a second deposit was received in the ICE UC bank account in Bahrain from the defendant in the amount of $29,990.00. Of the original $60,000.00 received by the defendant, the defendant retained $5,022.00 for his transaction fee.

**Count Six:**
On February 18, 2007, a second joint undercover operation involving the defendant took place at the Piccadilly Inn, room 123, located at 5115 East McKinley Avenue, Fresno, California. The meeting involved the defendant, the ICE UCA, the ICE CW and an FBI CW. During the meeting, the ICE UCA and ICE CW again informed the defendant that they were involved in various illegal activities. The defendant believed that the proceeds given to him were represented to be the proceeds of criminal activity, to wit: illegal sale of counterfeit and stolen goods, which violate 18 U.S.C. §§ 2314 and 2315. The defendant agreed to assist them and wire transfer the money to the same ICE UC bank account in Bahrain for an enhanced fee of 12%. The meeting concluded and Muthana took $80,000.00 from the ICE UCA and ICE CW. The defendant took the monies back to his place of business. The defendant then performed a series of financial transactions by cashing checks at his place of business using the cash he received from the ICE UCA and ICE CW on February 18, 2007. The $80,000 was not transferred to the ICE controlled bank account because individuals, including Subhi, aka Yehia Ali Ahmed Alomari, were arrested in the New York area and the defendant's subsequent arrest.

At all relevant times herein, the defendant deposited the unemployment insurance checks and withdrew monies from those accounts from financial institutions whose activities affect interstate commerce.

The acts described in Counts One through Six occurred in the State and Eastern District of California.

6.   Potential Sentence.

The following is the maximum potential sentence which defendant faces as to each count:

(a)   Imprisonment.

   Maximum: Twenty (20) years.

(b)   Fine.

        Maximum:  Two Hundred and Fifty Thousand dollars ($250,000.00)

(c) Both such fine and imprisonment.

(d) Restitution- Mandatory

(e) Term of Supervised Release:

        Maximum: Three (3) years.

        (Should the defendant violate any of the terms of his supervised release, he can be returned to prison for the period of supervised release actually imposed by the Court or two (2) years, whichever is less.)

(f) Penalty Assessment.

        Mandatory: One Hundred dollars ($100.00).

7. <u>Waiver of Rights</u>.

Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to be represented by an attorney at all stages of the proceedings, and would have a right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial were a jury trial, the jury would be composed of twelve lay persons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other

disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

   (c)  If the trial were held before a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he was persuaded of the defendant's guilt beyond a reasonable doubt.

   (d)  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. At trial, the defendant would also have the right to assistance of legal counsel. If he could not afford legal counsel, one would be appointed for him by the court at no expense to him.

   (e)  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from this refusal to testify.

Defendant understands that by pleading guilty he is waiving all of the rights set forth above and defendant's attorney has explained those rights to him and the consequences of his waiver of those rights.

8.  Questions by Court.

Defendant understands that if the court questions him under oath, on the record and in the presence of counsel, about the offense to which he has pleaded guilty, his answers, if false, may later be used against him in a prosecution for perjury.

9.  Entire Agreement.

This plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement. There have been no representations or promises from anyone as to what sentence this Court will impose.

10.  Court not a Party.

It is understood by the parties that the sentencing court is neither a party to nor bound by this agreement and the sentencing judge is free to impose the maximum penalties as set forth in paragraph 6. Further, in making its sentencing decision, the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment or superseding information.

11. <u>Presentence Report</u>.

Defendant understands that the United States Probation Office is not a party to this agreement and will conduct an independent investigation of defendant's activities and his background. It will then prepare a presentence report which it will submit to the Court as its independent sentencing recommendation. In addition, the government will fully apprise the Probation Office, as well as the Court, of the full and true nature, scope and extent of the defendant's criminal activities, including information on his background and criminal history.

McGREGOR W. SCOTT
United States Attorney

DATED: 11-15-07    By _____
                   STANLEY A. BOONE
                   Assistant U.S. Attorney

DATED: 11-15-07    x_____
                   ABDULLA KASEM AHMED MUTHANA
                   Defendant

DATED: 11-15-07    _____
                   J.M. IRIGOYEN
                   Attorney for Defendant

I declare that I am a court certified ~~Yemeni~~ arabic language interpreter/translator. On  11-15-07  2007, I read the

//
//

15

entire contents of the foregoing plea agreement to ABDULLA KASEM AHMED MUTHANA, translating the document from English to ~~Yemeni~~ arabic.

Dated: 11-15-07

_____
Interpreter/Translator