```
J.M. IRIGOYEN #177626
Attorney at Law
J.M. IRIGOYEN LAW CORPORATION
2131 Amador
Fresno, CA 93721

559.233.3333


Attorney for Defendant
ABDULLA KASSEM MUTHANA
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>ABDULLA KASSEM MUTHANA,<br><br>     Defendant. | Case No: 06-cr-00321-OWW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DOWNWARD DEPARTURE & VARIANCE**<br><br>Date: 04-14-08<br>Time: 1:30 p.m.<br>Room: 3<br>The Honorable Wanger |

**STATEMENT OF FACTS**

Frustrated by his inability to recover for his defense $120,000 of Government-seized legitimate funds, Defendant decided to accept responsibility by pleading guilty, which included that money's forfeiture, even though that also meant surrender of his entrapment and outrageous government conduct defenses, and loss of his naturalization petition. Muthana's dcl. in support hereof, ¶¶ 2-7.

Defendant accordingly plead guilty to cashing, at the Government's request, 324 Government-manufactured EDD checks, with a $209,130 face value, in four batches over a three month period. Each batch, consisting of 58 checks involving

1

$36,984, 108 checks involving $69,980, 84 checks involving $53,430, and 74 checks of $48,736, constituted the bases of Counts 14, respectively. Counts 5 and 6 were for $60,000, and $80,000, respectively, of Government money which it requested wire-transferred overseas to a Government controlled bank for a fee. Plea Agreement, Factual Basis, pp. 8-11; PSR, ¶¶ 13-20.

**ARGUMENT**
**I**
**A DOWNWARD DEPARTURE FOR EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY IS PROPER**

Defendant is entitled to a substantial downward departure for extraordinary acceptance of responsibility (see, e.g. *United States v. Miller*, 991 F.2d 552, 553-54 (9th Cir. 1991)) because he -

(1) agreed to forfeit $120,000 of non-forfeitable allegedly commingled[1] legitimate funds[2];

(2) relinquished his right to seek dismissal of the indictment for interference with his right to counsel in depriving him of his $120,000 needed for his defense[3];

(3) gave up his right to defend on entrapment and outrageous government conduct grounds[4]; and,

---

[1] See, e.g. *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997) ("merely pooling tainted and untainted funds in an account does not, without more, render an account subject to forfeiture[]" (relying on *United States v. $448,342.85*, 969 F.2d 474 (7th Cir. 1992), cert. denied, 552 U.S. 960, 139 L.Ed.2d 305, 118 S.Ct. 390 (1997)).

[2] Although "forfeiture [of forfeitable property] is not a voluntary act which demonstrates acceptance of responsibility" (*United States v. Crook*, 9 F.3d 1422, 1426 (9th Cir. 1993), forfeiture of **legitimate** funds demonstrates the opposite.

[3] See, *United States v. Stein*, 435 F.Supp.2d 330 (S.D.N.Y. 2006).

[4] See, e.g. *United States v. McClelland*, 72 F.3d 717, 721-24 (9th Cir. 1995); *United States v. Citro*, 842 F.2d 1149, 1151-53 (9th Cir. 1988).

1      (4) surrendered his naturalization rights[5].

## II

### A DOWNWARD DEPARTURE FOR OUTRAGEOUS GOVERNMENT CONDUCT OR IMPERFECT ENTRAPMENT IS WARRANTED

While a downward departure based on imperfect entrapment is unavailable after a guilty plea (*United States v. Dickey*, 924 F.2d 836 (9th Cir.), cert. denied 502 U.S. 943, 116 L.Ed.2d 334, 112 S.Ct. 383 (1991)), it should apply here because the Government-created circumstances which produced the plea are as suspect as the government-created circumstances leading to these crimes.

Although Defendant concedes the defense of outrageous government conduct had little chance of success (see, e.g. *United States v. McClelland*, 72 F.3d at 721-22), the Government still "initiated all contacts [which him]" (*United States v. Garza-Juarez*, 992 F.2d 896, 905 (9th Cir. 1993)), "'manufactured'" (*McClelland*, 72 F.3d at 721-22), and "supplied" (see, e.g. *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978); *Green v. United States*, 454 F.2d 783 (9th Cir. 1971)) the alleged fraudulently obtained EDD checks(cf. *United States v. Citro*, 842 F.2d at 1153 (finding the Government had not "created the criminal activity" even though it originally proposed the illegal scheme and supplied the counterfeit credit cards) for Counts 1-4, and initiated all contacts and

---

[5] Unlike general deportation consequences which do not justify downward departures (*United States v. Alvarez-Cardenas*, 902 F.2d 734, 736-37 (9th Cir. 1990)), surrender of a naturalization petition, itself based on good moral conduct and cultural assimilation should alone be sufficient to justify a downward departure (see, e.g. *United States v. Lipman*, 133 F.3d 726 (9th Cir. 1998)).

similarly supplied all the money and bank accounts for the wire-transfer crimes in Counts 5 and 6 sufficient to justify a downward departure for an imperfect outrageous government conduct defense. "[S]ection 5K2.12 was meant to apply precisely to those situations where a complete defense was not present." *United States v. Garza-Juarez*, 992 F.2d at 912.

Moreover, because the plea was produced by the Government's seizure, refusal to return, and eventual forfeiture of Defendant's $120,000 in legitimate funds needed to finance his defense, we will never know if "the prosecution [could have] prove[d] beyond a reasonable doubt []the defendant was predisposed to commit the crime prior to first being approached by the government agents[]" (*United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994) (citing *Jacobson v. United States*, 503 U.S. 540, 554, 118 L.Ed.2d 174, 112 S.Ct. 1535, 1540 (1992)), cert. denied, 513 U.S. 1171, 130 L.Ed.2d 1106, 115 S.Ct. 1147 (1995). But "the government [having] induced [Defendant] to break the law [] the defense of entrapment [even if imperfect, would have been] at issue" (*id.*) had Defendant had his $120,000 of legitimate funds to finance his defense.

Accordingly, a downward departure or non-guideline sentence variance for imperfect entrapment or outrageous government conduct during the investigation and post prosecution is warranted.

/ / /

/ / /

## III

## A SENTENCING MANIPULATION DOWNWARD DEPARTURE IS PROPER

If the Government neither entrapped Defendant nor engaged in outrageous conduct to bar a conviction, it surely "engaged in outrageous official conduct which caused [Defendant] to commit [] more [] crime[s] for which a greater penalty attaches[]" (*United States v. Si*, 343 F.3d 1116, 1128 (9th Cir. 2003) (citing *United States v. Davis*, 36 F.3d 1424, 1433 (9th Cir. 1994)) to justify a sentencing factor manipulation downward departure down to the first batch of 58 checks with a face value of $36,984. Thereafter the Government had no reason, other than to manipulate a greater sentence at will, to keep coming back over and over during a three month period to re-catch the same, but inflated, fish.

## CONCLUSION

Defendant should therefore be granted a 6-level downward departure or equivalent variance, appropriate for him cashing the first $36,984 of EDD checks. See, U.S.S.G. §2D1.1(b)(1)(D).

Dated: March 31, 2008

J. M. IRIGOYEN LAW CORPORATION

by: _____
J. M. Irigoyen,
Attorney for Defendant
Abdulla Kassem Muthana