McGREGOR W. SCOTT
United States Attorney
STANLEY A. BOONE
Assistant U.S. Attorney
4401 Federal Building
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 01: 06-CR-00321 OWW |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S OBJECTION TO |
| v. | ) | DEFENDANT'S MOTION FOR |
| | ) | DOWNWARD DEPARTURE OR VARIANCE |
| | ) | |
| | ) | DATE: April 28, 2008 |
| ABDULLA KASSEM MUTHANA, | ) | TIME: 9:00 a.m. |
| | ) | PLACE: Courtroom Three |
| | ) | Honorable Oliver W. Wanger |
| | ) | |
| | ) | |
| Defendant. | ) | |

TO THIS HONORABLE COURT, DEFENDANT AND HIS ATTORNEY OF RECORD:

The United States of America, by and through its undersigned attorneys, McGregor W. Scott, United States Attorney, and Stanley A. Boone, Assistant United States Attorney, respectfully objects to the defendant's motion for downward departure or variance. The defendant articulates his request on five alternative and commutative grounds: (1) extraordinary acceptance of

1

responsibility,[1] (2) entrapment and outrageous government conduct, (3) naturalization rights, (4) imperfect legal defense[2] and (5) sentencing manipulation.

**ARGUMENT**

A court may depart downward when there exists a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). A court may do so, however, only if the circumstance upon which it seeks to base its departure "is consistent with the sentencing factors prescribed by Congress. . . . " United States v. Paycheck-Osuna, 23 F.3d 269, 272 (9th Cir. 1994)(citing United States v. Lira-Barraza, 941 F.2d 745, 746)(9th Cir. 1991). A departure is permitted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline." Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2046 (1996). The defendant bears the burden to prove by a preponderance of the evidence that the circumstances of her case warrant a downward departure. United States v. Anders, 956 F.2d 907, 911 (9th Cir. 1992).

Under Booker and FanFan, this court not only considers the Sentencing Guidelines but the other factors of Title 18, United

---

[1] While the defendant divides his motion into these five areas it appears from his argument that the main theme is "extraordinary acceptance" which is then divided into these other areas described in 2, 3 and 5. See Defendant's Memorandum Points and Authorities filed April 2, 2008 at 2-3.

[2] In reviewing the defendant's brief on the matter it appears that his imperfect legal defense argument is subsumed in his basis under number two (outrageous government conduct).

States Code, Section 3553 in order to arrive at a reasonable sentence.  Application of the sentencing guidelines is a good standard by which this court determines the reasonableness of the sentence.  Applying these standards, the sentence as recommended by the probation officer is more than reasonable in terms of a sentence for this defendant.  Under the sentencing guidelines, departures are only permitted in individualized, atypical cases where the particular facts distinguish the case from others. Departures are reserved for factual scenarios that are, in guidelines terminology, "outside the heartland."  All indications suggest that, even after <u>Booker</u>, the same principle applies. Although the <u>Booker</u> decision permits the Court to impose a non-Guideline sentence in some circumstances, the Court's decision to do so must be "reasonable."

As noted, under Title 18, United States Code, Section 3553(a), the court must look to certain sentencing factors.  These include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;
- the need for the sentence imposed
  -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  -- (B) to afford adequate deterrence to criminal conduct;
  -- (C) to protect the public from further crimes of the defendant; and
  -- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Here, applying the guidelines and the sentencing factors set forth in Title 18, United States Code, Section 3553, results in a

1  clear finding of thirty (30) months imprisonment as a fair and
2  reasonable sentence with the meaning of federal sentencing
3  jurisprudence.

**Extraordinary Acceptance of Responsibility:**

The defendant contends that this court should depart on the basis of "extraordinary acceptance."  Defendant's Memorandum Points and Authorities filed April 2, 2008 at 2-3.  This "extraordinary acceptance" is an appropriate basis for departure because the defendant agreed to forfeit $120,000 of non-forfeitable funds commingled with legitimate funds, relinquished his right to seek dismissal of the indictment based upon entrapment and outrageous government conduct, and surrendered his naturalization rights. Defendant's Memorandum Points and Authorities at 2-3.

First, the guidelines do not address "extraordinary acceptance" but give "acceptance" under Section 3E1.1, which the defendant was appropriately given in his case.  Second, while nothing in Section 3553 requires consideration of "extraordinary acceptance" the facts surrounding this Extraordinary acceptance should be assessed.

**a.   Naturalization right**

As to his contention that he should be given a downward departure for "extraordinary acceptance" by surrendering his naturalization rights, this is not the case.  While it may be the natural consequence of his plea that he loses his permanent residency status, and hence, his right to become a United States citizen, it is not a right he explicitly gave up by pleading guilty.  As with any non-naturalized individual residing in the United States there may be consequences to committing and being

convicted of criminal conduct in the case.  The evidence against the defendant was quite strong and the result of an undercover operation which had a variety of undercover meetings and recordings of the defendant and a variety incriminating statements which in the government's mind where more compelling to his plea then his generosity in pleading guilty.  This factor is simply not something outside the heartland of activity and a factor which should be considered under Section 3553 but must be rejected.

**b.    Outrageous Government/Entrapment Conduct (Imperfect Defense):**

Next, the defendant contends that he had a possible "imperfect defense" surrounding outrageous government conduct.  However, the motion and the accompanying points and authorities do not factually articulate how the government's conduct was outrageous or was entrapment.  In fact the opposite is true in this case and the there was simply nothing "outrageous" about the conduct of the government but simply good law enforcement investigation of a person who was major launderer of monies overseas.  When the search was performed on the defendant's location in February 2007 pursuant to federal search warrant, agents of the Joint Terrorism Task Force found an account book of the defendant, often referred to as a hawala book,[3] which listed millions being taken in by the defendant over a number a years, both prior to and after the "so-called"

---

[3] The tern "Hawala" actually means transfer in Arabic. The system operates based upon trust between hawaladars who service their customers. Customers will bring money to hawaladar A in one location to send money to another location. Hawaladar A will then contact hawaladar B in the location to receive the money and tell hawaladar B the amount of money to be picked up. The government contends that the defendant is a hawaladar.

5

outrageous government.  What this defendant was doing was taking money, in the form of cash, from individuals who wished to have their monies transferred overseas.  The entries were logged into his hawala book.  The cash received by the defendant was then used by him to pay cash to those who "cashed" checks at his stores. These checks included  legitimate payroll or unemployment checks or fraudulent unemployment insurance checks.  The defendant then used the cash he received from his halawa customer to pay the incoming checks he cashed from his check cashing customers.  As a result, little to no cash was being deposited into his bank account, in comparison to what he was receiving from his hawala customers.  He received both a fee to cash the checks and to "transfer" money for his hawala customers.  The check customers entailed persons cashing payroll checks and both legitimate and fraudulently acquired EDD unemployment insurance checks.  Because of the nature of the illegal EDD checks, the defendant charged the undercover agent $50 per check.  At the end of the scheme he was charging $60 per check as a fee to cash these "illegally" obtained checks.

These checks were then deposited into one of the defendant's bank accounts.  From that account he then transferred approximately fifty (50) percent of the deposited funds into another bank account that he used for overseas transactions.  In the interim, the defendant had provided blank checks or pre-signed checks on this overseas account to his overseas contact who, when instructed to by the defendant, would write out the amount of the check and then cash the check overseas, usually in Yemen.  These overseas checks were negotiated overseas with the defendant's overseas contact filing out the cash and using the signature stamp to excite the

1  check.  As a result, these checks were first negotiated overseas,
2  usually in Yemen.  Under this system, the defendant was able to
3  conceal the deposit of cash from his United States hawala
4  customers.  He concealed who the monies were coming from, and going
5  to, and made it appear that all his business did was cash business
6  checks which was then transferred overseas to others and made it
7  appear that his business was a legitimate business in the form of
8  checks being cashed.  In fact, the defendant was operating an
9  illegal money remitting business which laundered money for those
10 who wished to avoid reporting requirement for sending cash overseas
11 or depositing cash over certain monetary amounts, such as avoiding
12 the CTR reporting requirements.

13      In this case, the first of four EDD check transactions
14 involving the sting operation occurred in September 2005 (Count
15 One).  For the three months prior to this transaction, from June
16 28, 2005 to September 28, 2005, the defendant's hawala book
17 reported approximately $1.2 million in logged transactions.  See
18 Exhibit 1.[4]  The last EDD operation involving $48,736 in EDD checks
19 (Count Four) occurred in January 2006.  For the three months after
20 that period, from January 12, 2006 to April 12, 2006, the defendant
21 logged in his books $1.6 million in hawala transactions.  Even
22 during the time the United States was conducting its undercover
23 sting operation again this defendant, the defendant's hawala book
24 reported $1.5 million in transactions.

25      Even for the last thirty days prior to the execution of the

---

[4] Due to the sensitivity of this document, the hawala book will be provided to counsel and the court as Government's Exhibit 1, but will not be filed through the ECF system.

federal search warrant on the defendant's locations (February 2007), the hawala book logged approximately $350,000 in logged transactions. It is abundantly clear that there was nothing outrageous about the government's conduct in this case.

### c.   Forfeiture of Seized Proceeds

The defendant also contends that he forfeited the proceeds of his activity to the United States and that such an agreement to forfeit should be a basis for departure. In a similar vein, he contends that the forfeiture/seizure of that money resulted in a loss of money to the defendant to pay his lawyer to adequately represent him in filing a variety of motions. The defendant's arguments are flawed on a number of basis. First, the monies were properly seized pursuant to a federal seizure warrant and affidavit consistent with federal law. See Exhibit 2 (seizure affidavit). Second, there is no contention, other than the defendant's mere assertion, that the government preferred some sort of outrageous government conduct or entrapped the defendant. As can be seen from the earlier discussion, above, and Government's Exhibit 1, the defendant was in the business of illegality transmitting monies from others on a concealed basis. Therefore, the proceeds were not necessarily legal as the defendant describes it but illegally derived. Second, any monies the defendant possessed and that were seized were not necessarily his monies from which he could use to pay his lawyer, but were monies of his "customers," which he could not have used for this purpose. His position earlier in the case

was that these monies were monies from others and not his.[5] Further, these monies were the result of an illegal money transmitting operation and were promptly seized and hence no legitimate proceeds as the defendant describes them. Therefore, this argument is also without merit and is again not basis for downward departure.

### d.  **Sentencing Entrapment:**

Sentencing entrapment, or sentence factor manipulation, occurs when a defendant who is predisposed to commit a minor or lesser offense is entrapped into committing a greater offense subject to greater punishment. United States v. Lopez, 106 F.3d 309 (9th Cir. 1997). A defendant bears the burden of proving sentencing entrapment by a preponderance of the evidence. United States v. Naranjo, 52 F.3d 245, 250 (9th Cir. 1995) and United States v. Riewe, 165 F.3d 727, 729 (9th Cir. 1999)(defendant bears burden of proving sentencing entrapment by a preponderance of the evidence). In deciding whether a departure is warranted on the ground of imperfect entrapment, the district court must weigh the amount of inducement, the level of reluctance on the defendant's part, and who acted first. United States v. McClelland, 72 F.3d 717, 726 (9th Cir. 1995). United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir. 1994). The defendant also must establish that the government engaged in some form of misconduct, pressure, or coercion that caused a defendant to increase his criminal culpability. See United States v. Si, 343 F.3d 1116, 1128 (9th Cir. 2003) ("[i]n order to

---

[5]  In response to this assertion, the government informed the defendant's counsel that if anyone wished to make a claim on the seized monies they could do so but needed to notify the government that the person wished to file a claim.

9

show sentencing entrapment, a defendant must show that the government engaged in outrageous official conduct which caused the individual to commit a more significant crime for which a greater penalty attaches"); United States v. Robinson, 94 F.3d 1325, 1329 (9th Cir. 1996)("A defendant who is unduly pressured by government agents to commit a crime involving more loss than he originally intended is entitled to a downward departure for sentencing entrapment."). However, merely providing the suggestion or opportunity for a defendant to commit the offense does not amount to inducement. United States v. Mendoza-Prado, 314 F.3d 1099, 1102 (9th Cir. 2002).

Here, the defendant has clearly failed to meet his burden by presenting no factual assertions or evidentiary proffer that he was entrapped for sentencing purposes. The mere assertion by him that he was entrapped for sentencing purposes is legally insufficient. In fact, the defendant increased his check cashing fee for "what he believed" were the fraudulently acquired EDD checks from $50 per check to $60. See PSR ¶¶ 7-10. The evidence has shown that this defendant is a sophisticated launderer who appears to have connections overseas. There is nothing to suggest that he was entrapped, and therefore, this basis for downward departure is not appropriate.

**e.   Overall Sentence Recommended by Probation is Reasonable:**

As to this defendant's sentence the recommendation by the probation officer is an extremely fair and just sentence. Despite the fact that the defendant appeared to have laundered millions of dollars overseas, his guideline calculation is based upon the sting monies. Further, he was willing to transfer, and do on one

10

occasion, transfer money overseas on behalf of what he believed to be a terrorist organization. While he may say he is opposed to terrorism and terrorists,[6] he is not so opposed when it could result in payment to him. This is reasonable sentence and the fact that the defendant will more than likely get deported is a factor which the government considers in arriving at a fair and just sentence but not one for which a sentence reduction should be given. The thirty months is fair and reasonable and should be imposed by the court as such.

## **CONCLUSION**

Wherefore, for the reasons stated above, the court should deny the defendant's motion for downward departure.

Respectfully Submitted,

McGREGOR W. SCOTT
United States Attorney

DATED: 4/25/08            By    /s/ Stanley A. Boone
                                STANLEY A. BOONE
                                Assistant U.S. Attorney

---

[6] See PSR ¶ 28.