1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4    UNITED STATES OF AMERICA,      )  Case No. 1:06-cr-00321-OWW
                                    )
5                   Plaintiff,      )  Fresno, California
                                    )  Friday, November 16, 2007
6        vs.                        )  9:00 A.M.
                                    )
7    ABDULLA KASEM AHMED MUTHANA,   )  Hearing re:  change of plea;
                                    )  motion to withdraw as counsel
8                   Defendant.      )
     _____)

9
                        TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE OLIVER W. WANGER
                    UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12
     For Plaintiff:              STANLEY A. BOONE
13                               U.S. Attorney's Office
                                 2500 Tulare Street, Suite 4401
14                               Fresno, CA   93721
                                 (559) 497-400
15
     For Defendant:             J. M. IRIGOYEN
16                               J.M. Irigoyen Law Corporation
                                 2131 Amador Street
17                               Fresno, CA   93721
                                 (559) 233-3333
18
     Court Recorder:            OTILIA FIGUEROA
19                               U.S. District Court
                                 2500 Tulare Street, Suite 1501
20                               Fresno, CA   93721
                                 (559) 499-5928
21
     Transcription Service:     Petrilla Reporting &
22                                 Transcription
                                 5002 - 61st Street
23                               Sacramento, CA    95820
                                 (916) 455-3887
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

1

1     FRESNO, CALIFORNIA, FRIDAY, NOVEMBER 16, 2007, 12:06 P.M.

2

3          THE CLERK:  The Court calls Item No. 2, Case No. 06-

4     cr-321, United States v. Abdulla Kasem Ahmed Muthana, change of

5     plea, motion to withdraw as counsel.

6          MR. BOONE:  Good afternoon, Your Honor, Stan Boone on

7     behalf of the United States.

8          MR. IRIGOYEN:  Good afternoon, Your Honor.  Mr.

9     Abdulla Muthana, who is in court with counsel, J. M. Irigoyen.

10    He's here being assisted by the interpreter in the Arabic

11    language, certified interpreter.  And to begin, Your Honor, I'd

12    like to withdraw the motion that is on calendar.

13         THE COURT:  All right.  That is the motion to

14    withdraw as counsel of record you're withdrawing?

15         MR. IRIGOYEN:  Yes.

16         THE COURT:  All right.  The motion is withdrawn and

17    it is ordered off calendar.  I --

18         MR. IRIGOYEN:  Would the Court like me to arraign him

19    on the information --

20         THE COURT:  I'm going to do that first.

21         Mr. Muthana, there has been filed a superseding

22    information that charges six counts of money laundering, each

23    of these a felony, and it charges an additional count of

24    criminal forfeiture and there is a list of the property that is

25    sought to be forfeited.  Is your name correctly set forth on

2

1   the new superseding information?

2      (Defendant's responses given through an interpreter.)

3        THE DEFENDANT:  Yes.

4        THE COURT:  And have you reviewed the new charges

5   that are set forth in this information with Mr. Irigoyen, your

6   attorney?

7        THE DEFENDANT:  Yes.

8        THE COURT:  Do you wish me to formally arraign you by

9   reading you the superseding indictment and providing a

10   constitutional advisement of rights?

11        THE DEFENDANT:  No.

12        THE COURT:  Do you understand that by now going

13   forward under a superseding information that these new charges

14   have been filed by the prosecutor, Mr. Boone and he is not a

15   grand jury.

16        You have a right to have a grand jury return this

17   indictment to consider the evidence in doing that and by

18   proceeding under a superseding information you're giving up the

19   right to have a grand jury determine if there's probable cause

20   based on the evidence that's submitted for these new charges.

21        Do you understand all that?

22        THE DEFENDANT:  Yes.  Yes.

23        THE COURT:  And are you willing to waive your right

24   to have a grand jury consider the evidence for these new

25   charges?

3

1          THE DEFENDANT:  Yes.

2          THE COURT:  The Court finds that Mr. Muthana's waiver

3   of indictment is knowing and voluntary and it is accepted.  To

4   accept a change of plea, I'm going to have to ask you a series

5   of questions.  For this you need to be under oath.

6          THE DEFENDANT:  Yes.

7          THE CLERK:  Please raise your right hand.

8       ABDULLA KASEM AHMED MUTHANA, DEFENDANT, SWORN

9          THE COURT:  You may put your hand down.

10          Do you understand now that you're under oath?  If you

11   answer any question I ask with a false answer, that could

12   subject you to a separate prosecution for perjury.

13          THE DEFENDANT:  Yes.

14          THE COURT:  Would you state your true name, please?

15          THE DEFENDANT:  Abdulla Kasem Ahmed Muthana.

16          THE COURT:  Your age?

17          THE DEFENDANT:  Forty-four years.

18          THE COURT:  How much education have you completed?

19          THE DEFENDANT:  Preparation school.

20          THE COURT:  And how many years of school does that

21   entail?

22          THE DEFENDANT:  Eight years.

23          THE COURT:  Have you ever been treated for mental

24   illness?

25          THE DEFENDANT:  No.

4

1        THE COURT:  Have you ever been treated for addiction

2   to narcotic drugs?

3        THE DEFENDANT:  No.

4        THE COURT:  Today have you consumed any medicine,

5   drug, or alcohol?

6        THE DEFENDANT:  No.  No.

7        THE COURT:  In this case you were charged by

8   indictment with six counts of money laundering and criminal

9   forfeiture, but that seems to be the superseding information.

10  What were the original charges?

11       MR. BOONE:  The original charges were four counts of

12  money laundering.

13       THE COURT:  And there are now new charges in a

14  six-count superseding information which charges six counts of

15  money laundering and a criminal forfeiture allegation.  Have

16  you been able to discuss all of these charged crimes with Mr.

17  Irigoyen, your attorney, and how you would defend against them

18  if we had a trial?

19       THE DEFENDANT:  Yes.

20       THE COURT:  Are you satisfied with the legal advice,

21  counsel and representation Mr. Irigoyen has provided you in

22  this case as your attorney?

23       THE DEFENDANT:  Yes.

24       THE COURT:  After your discussion with Mr. Irigoyen

25  about the nature of the charges, do you understand the charges?

5

1            THE DEFENDANT:  Yes.  Yes.

2            THE COURT:  Please look at the plea agreement, page

3   15 line 17.  Do you recognize that signature?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Whose is it?

6            THE DEFENDANT:  Abdulla Kasem Ahmed Muthana.  Abdulla

7   Kasem Ahmed Muthana.

8            THE COURT:  That's you?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Was the agreement translated from Arabic

11   to -- I'm sorry, from English to Arabic so you could understand

12   it?

13           THE DEFENDANT:  Yes, yes.

14           THE COURT:  And are you satisfied that after going

15   over the agreement with Mr. Irigoyen that you -- and the Arabic

16   interpreter that you understood the agreement before you signed

17   it?

18           THE DEFENDANT:  Yes.

19           THE COURT:  I'm going to go through the agreement

20   with you now to make sure you understand it and intend to

21   perform it.  The plea agreement is going to be filed with the

22   Court.  It will become part of the permanent record of your

23   case.

24           Do you agree?

25           THE DEFENDANT:  Yes.

6

1          THE COURT:  You are going to enter a guilty plea to

2     Counts 1 through 6 of the superseding information which charge

3     you with money laundering.  Each of those crimes is a felony,

4     agreed?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You will not be allowed to withdraw your

7     plea in sentencing if the Court doesn't follow the government's

8     sentencing recommendations under your agreement because the

9     Court isn't bound and must -- by your agreement and must

10    exercise independent sentencing discretion on the

11    recommendation of an independent probation officer.  So if the

12    sentence was different from that which is going to be

13    recommended and you didn't like the sentence and then said I

14    want to start all over again, I move to withdraw my plea of

15    guilty after it's accepted, that would not happen.

16          Do you understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you agree?

19          THE DEFENDANT:  Yes.

20          THE COURT:  You have been advised that you have

21    rights under the constitution and federal law to appeal your

22    plea, conviction and sentence and you are without knowledge

23    voluntarily giving up your right to seek any kind of appellate

24    review directly from this Court to a higher court or to seek

25    any collateral review in this Court or another court after your

7

1    conviction by filing a petition for writ of habeas corpus or

2    any other type of petition or motion for review.  You're giving

3    up all rights of review of your conviction, plea, and your

4    sentence.

5              Do you understand?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you agree?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You're agreeing that for sentencing

10   purposes the base offense level for money laundering is eight

11   under the relevant guidelines section 2(s)1.1(a)(2).  Twelve

12   levels are added for the value of the laundered funds which in

13   this case is more than 200,000 but less than $400,000.  You

14   also agree that your offense level is increased by two offense

15   levels because money laundering is involved under 18 U.S.C.

16   Section 1956.

17             Do you agree to all of that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  You agree to give up any rights under the

20   Haight Amendment to recover attorney's fees or other litigation

21   expenses incurred in the investigation and prosecution of a

22   case against you, including dismissed charges.

23             Do you agree?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You agree that your conduct is governed

8

1   by the Mandatory Restitution Act and agree to pay full -- the

2   full amount of restitution that the Court will order.  And Mr.

3   Boone, can we have an estimate of what restitution will be

4   sought in this case?

5            MR. BOONE:  Your Honor, the government would be

6   seeking no more than 350,000 and I'd note that with regard to

7   the 350,000 that as a result of the money laundering scheme

8   some monies were returned during the course of the scheme which

9   would then be subtracted as well as monies that are being

10  forfeited and then eventually remitted back to the victim in

11  the case, so it's undeterminable, but I can tell you from a top

12  end guideline we'd seek no more than 350,000.

13           THE COURT:  Thank you, very much.

14           MR. IRIGOYEN:  And, Your Honor, if I may add, the

15  forfeited amounts are much more than the amount that was lost

16  for --

17           THE COURT:  But there's not going to be an offset for

18  the forfeited amounts?

19           MR. BOONE:  There may be a forfeit of amount.  What

20  Mr. Irigoyen is referring to is during the course of the scheme

21  monies were given.  Mr. Muthana would take his cut, but that

22  cut would be subject to restitution.  There is an amount

23  subject to forfeiture which is different than the restitution,

24  but under the Remission Principles that they would -- they may

25  even be entitled to credit.  And I can't speak as to the exact

9

1    amounts today.

2          THE COURT:  All right.  So there may be an offset,

3    but that'll be a -- either a matter of agreement or a matter of

4    we'll have a hearing and determine it?

5          MR. BOONE:  Agreed, Your Honor.

6          MR. IRIGOYEN:  Agreed.

7          THE COURT:  Do you understand all that, Mr. Muthana?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you agree?

10         THE DEFENDANT:  Yes.

11         THE COURT:  For sentencing, the Court will consult

12   the United States Sentencing Guidelines which are advisory and

13   that will be applied, that calculation and evaluation, as one

14   sentencing factor.  The Court will additionally consult all the

15   3553 factors under Title 18.  Those your attorney will explain

16   to you and I will explain to you at the time of sentencing.

17   They include such things but not limited to your background,

18   criminal history, seriousness of the offense, need for

19   deterrence, just punishment, parody of sentencing and many

20   other factors.  The Court will then, under the totality of the

21   circumstances, pronounce a reasonable sentence applying all the

22   sentencing law.

23         Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you agree?

10

1          THE DEFENDANT:  Yes.

2          THE COURT:  You agree to forfeit the following

3    property voluntarily and immediately to the United States.

4    This includes approximately $70,265.38 in U.S. currency seized

5    from Bank of the West held in Abdulla Q. Ahmed DBA Ranchito

6    Market.

7          Next, 161 miscellaneous third party checks valued at

8    $47,712.13 in U.S. currency and three Western Union money

9    orders valued at one -- I'm sorry, $1,680 in U.S. currency

10   totaling $49,392.13.

11         Next, approximately $10,729.93 in U.S. currency

12   seized from Bank of the West from the same account that I

13   previously -- no it's a different account.  This is Bank of the

14   West account last four digits 0633.  The first account -- it's

15   at Bank of the West in the Ranchito Market DBA account.  The

16   first bank account was Bank of the West 57 -- 5970.

17         Next, approximately $2,906.86 in account Bank of the

18   West Ranchito Market lottery account, last four digits 3710.

19   Next, $1,117.96 in U.S. currency, Bank of the West account,

20   last four digits 1633, Abdulla Ranchito Market DBA.

21         Next, $249.56 in U.S. currency from Bank of the West

22   account last four digits 7524 in the Abdulla's International

23   Transfer DBA account.

24         Next, $378.01 in U.S. currency from Bank of the West

25   account last four digits 2456 in the Abdulla's International

1    Transfer DBA account name.

2            Next, $81,933.44 in U.S. currency seized from 2749

3    Whitley Ranchito Market Number 1 in Corcoran, California and

4    lastly $2,733 in U.S. currency seized from 2838 Joaquina (ph.

5    12:21:30) in Tulare, California.

6            Since those were all property involved in money

7    laundering transactions and traceable to such property they are

8    forfeitable.

9            Do you agree with all of that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you further to agree to cooperate in

12   any administrative, civil or judicial proceeding of forfeiture,

13   you waive your right to notice of any forfeiture proceeding

14   involving the property I've just identified.  You will not file

15   a claim or assist anyone else in filing a claim in the

16   forfeiture proceeding.  You give up the right to notice oral

17   pronouncement of forfeiture at the time of sentencing and any

18   defects in such pronouncement that pertain to forfeiture and

19   give up any defenses to forfeiture including any defense

20   predicated on ex post facto double jeopardy excessive fines

21   clauses of the U.S. Constitution and you knowingly and

22   voluntarily give up any right to jury trial in any criminal or

23   civil forfeiture proceeding.

24           Do you understand all that?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Do you agree?

2          THE DEFENDANT:  Yes.

3          THE COURT:  The government in return agrees to

4    recommend a three-level reduction if your offense level reaches

5    16 in the computation of your offense level or two if it's less

6    than 16 if you fully accept responsibility.  The government

7    further agrees that your base offense level for sentencing

8    under the guidelines for money laundering starts at 8, twelve

9    levels for a loss more than 200,000 but less than $400,000 plus

10   two levels for money laundering.

11          Further, the government agrees not to seek any other

12   enhancements in your offense level under the guidelines.  The

13   government agrees to seek a sentence not higher than the

14   midpoint of the applicable sentencing guideline range.  The

15   government makes no other representation or promise regarding

16   fines, what your criminal history is, how many criminal history

17   points you have, or will not be restrained from freely

18   commenting or making recommendations to the Court and probation

19   office regarding your sentence.

20          Do you understand everything the government's agreed

21   to?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you agree?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Well, that's everything that's in

13

1    writing.

2          MR. IRIGOYEN:  There is one more provision, Your

3    Honor.  It's under (c) dealing with Chapter 3 of the United

4    States Sentencing Guidelines; that those would not be

5    considered in sentencing.

6          THE COURT:  I said that no other guideline --

7          MR. BOONE:  Yeah, I -- you did, Your Honor, say no

8    other enhancements.

9          MR. IRIGOYEN:  Very well.

10         THE COURT:  Yes.  Would be considered.  All right.

11   Now that's everything that you've agreed to and the

12   government's agreed to that's written down.  Do you have any

13   different understanding; do you expect to get anything else

14   that is not written down?

15         THE DEFENDANT:  Everything.

16         THE COURT:  You -- I don't think you understood my

17   question.  Everything you've agreed to give up and get in

18   return from the government and everything the government's

19   agreed to give you in return for your pleas of guilty and

20   forfeiture acquiescence is written down in this agreement.

21         Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you expect to get anything, has

24   anybody promised you anything that is not written down in this

25   agreement?

14

1          THE DEFENDANT:  No.

2          THE COURT:  Has anybody threatened you or put

3   pressure on you to get you to change your plea?

4          THE DEFENDANT:  No.

5          THE COURT:  Will you plead guilty because in truth

6   and in fact the elements of the crimes charged against you can

7   be proved beyond a reasonable doubt?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I must advise you the maximum punishment

10   you face for each of these crimes is the same.  It is 20 years

11   in prison, $250,000 fine.  Both fine and imprisonment could be

12   imposed.  Restitution is mandatory.  Supervised release term of

13   three years.  If you violate a term of supervised release, you

14   could be returned to prison for up to two years or the term

15   actually imposed, whichever is less.  The mandatory penalty

16   assessment of $100 at the time of sentencing.

17          Do you understand all the punishment that you face?

18          THE DEFENDANT:  Yes.

19          THE COURT:  I must now advise you of the elements of

20   the crime.  Before you could be convicted of any of these six

21   counts, the government for each count would have to prove true

22   beyond a reasonable doubt the following elements.  First, you

23   conducted a financial transaction which affected interstate

24   commerce.  Second, the financial transaction involved money,

25   which was represented to you by law enforcement or a person

1    acting at the direction of law enforcement to be proceeds of a

2    specified unlawful activity, in this case mail fraud; and

3    third, you conducted the financial transaction with the intent

4    to promote the carrying on of the specified unlawful activity.

5                Do you understand each of those elements?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Now I want to confirm that there are

8    facts that are true to support your change of plea.  For Count

9    1, on or about September 28th, 2005 an undercover State of

10   California DOJ agent presented you with 58 unemployment

11   insurance checks from the Employment Development Department.

12   They totaled $36,984.

13               It was represented to you and you believed it to be

14   true that those were the proceeds of a mail fraud scheme

15   involving unemployment insurance fraud in violation of United

16   States law.  You agreed to cash the checks for a fee of $50 per

17   check.  You then cashed the checks by depositing them in a

18   federally insured financial institution whose activities

19   affected interstate and foreign commerce.  You deposited them

20   over a number of days that are set forth on page 8; 14 checks

21   on the 29th of September of 2005, 12 checks on the 30th of

22   September of '05, 16 checks on October 3rd of '05, eight checks

23   on October 5th of '05, four checks on October 7th of '05 and

24   four checks on October 11th of 2005.

25               Is that all true?

16

1          THE DEFENDANT:  Yes.

2          THE COURT:  Count 2, same basic scheme.  You were

3   presented with another 108 unemployment insurance checks for

4   which you were to be paid $50 per check for cashing them.  You

5   went to the bank, used the business account and deposited 30

6   checks on November the 17th of 2005, 20 checks -- I misspoke.

7   That was 20 checks on November 17th, 25 checks on November 21st

8   of '05, eight checks on November 23rd of '05, 22 checks on

9   November 25th of '05, 15 checks on November 28th of '05, 10

10  checks on December 1st of '05 and eight checks on December 2nd

11  of '05.

12          Is that all true?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Same scheme on December 9th, 84 more

15  unemployment insurance checks the confidential informant

16  provided to you.  Again, you were to be paid $50 per check for

17  cashing them.  You deposited them in a bank pursuant to the

18  mail fraud scheme and these deposits included one check on

19  December 10th, 2005, 10 checks December 12th of '05, 11 checks

20  December 14th of '05, 10 checks December 16th of '05, 19 checks

21  December 19th of '05 and 13 checks December 22nd of '05.

22          Is all that true?

23          THE DEFENDANT:  Yes.

24          THE COURT:  For Count 4, same thing on December 22nd

25  of '05.  The confidential informant presented you 74 EDD

1  checks.  These totaled $48,736.  You were to be paid $60, an

2  increase, for each check.  You deposited these in the bank

3  pursuant to the mail fraud scheme and the numbers of checks set

4  forth on page 10, lines 3 to 5 were then deposited by you and

5  credit received.

6          Is all that true?

7          THE DEFENDANT:  Yes.

8          THE COURT:  On January 12th of '06 a meeting was set

9  up between an informant and a corroborating witness, an

10 undercover agent, to recover the balance of the check

11 transactions.  That was the second final meeting between

12 yourself and the undercover agent for EDD undercover

13 operations.  During that meeting you gave the undercover agent

14 $44,296 in cash and kept $4,440 as your check cashing fees.

15         Is that all true?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Between September 28th, 2005 and January

18 12th, 2006 you received 324 more EDD checks with a face value

19 totaling $209,130 from a law enforcement officer and a person

20 acting at the direction and with the approval of that officer

21 you received for the exchanging of cash for those checks a

22 total payment in fees of $16,940.

23         Is all that true?

24         THE DEFENDANT:  Yes.

25         THE COURT:  For Count 5, now you were meeting with

ICE agents, the Immigration and Custom Enforcements agency and it was represented to you by an ICE agent that the proceeds you were being given were the result of illegal activity by selling counterfeit cigarettes and counterfeit goods plus stolen property and the agents met you by a person named -- were sent to meet you by a person named Subhi, S-u-b-h-i, a resident of Buffalo, New York also known as Yahia Ali Ahmed Alamari (phonetic) to conduct the transactions.

At the meeting you took $60,000 in cash and agreed to transfer the money for a six percent fee.  You went to your residence -- I'm sorry, you went to your business residence location at 2749 Whitley Avenue in Corcoran, engaged in financial transactions with the money to transfer the monies overseas to a government-controlled bank account in Bahrain. On or about November 22nd, a deposit was received in the government bank account in Bahrain in the amount of $24,988 and on November 28th a second deposit was received in that same Bahrain bank account controlled by the government of $29,990. For this you were paid $5,022 as a transaction fee.

Is all that true?

THE DEFENDANT:  Yes.

THE COURT:  Count 6, February 18th, 2007 a second undercover operation at the Picadilly Inn, Fresno California on McKinley Avenue, Room 123.  There undercover operatives, vice and the FBI were there.  They told you that they had money that

1    was the proceeds of illegal activity including but not limited

2    to sale of counterfeit and stolen goods and you agreed for a

3    increased fee of 12 percent to take $80,000, which you took.

4    You took it back to your place of business, you performed

5    financial transactions, and the $80,000 was not actually

6    transferred, although you took it back to your place of

7    business because of arrests that were made and so you were not

8    actually paid fees for that transaction, but you intended to

9    receive those fees and you deposited the unemployment insurance

10   checks and withdrew monies from accounts that were those of a

11   financial institution whose activities affect interstate

12   commerce.

13           Is all that true?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Are you satisfied, Mr. Boone?

16           MR. BOONE:  Yes.  And the last paragraph, Your Honor,

17   the acts in Counts 1 through 6 occurred in the state --

18           THE COURT:  Yes.  All of these acts that I've

19   discussed in Counts 1 through 6 all occurred in the State and

20   Eastern District of California.

21           MR. BOONE:  I'm satisfied, Your Honor.

22           THE COURT:  Which includes Corcoran.  Is that true,

23   Mr. Muthana?

24           THE DEFENDANT:  Yes.  Yes.

25           THE COURT:  I will now advise you of the

1   constitutional statutory rights you're giving up by not having

2   a jury trial.

3          You have a right to be represented by an attorney at

4   every stage of your case.  If you cannot afford an attorney,

5   the Court will appoint one for you with no expense to yourself.

6   Do you understand your right to an attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  You have a right to a fair public and

9   speedy trial by jury.  At the jury trial you would be

10  represented by your attorney.  You would participate in

11  selection of a jury.  You could not be convicted unless and

12  until all 12 jurors unanimously agree with every element of any

13  crime charged against you is proved true beyond a reasonable

14  doubt.  If less than 12 jurors agree, there would be a mistrial

15  and that count would have to be tried over again.  To be

16  acquitted of any charge, the jury would have to unanimously

17  agree that at least one element of the crime was not proved

18  true beyond a reasonable doubt.  Then of that crime you would

19  be not guilty.

20         Do you understand your rights for a fair, public and

21  speedy trial as just explained?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Are you willing to give them up?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Your confrontation rights include the

1   right to be present in open court every time there's a

2   proceeding in your case, to be present at the jury trial, to

3   challenge the government's evidence which would consist of

4   testimony of witnesses under oath and exhibits received into

5   evidence.  You would have the right to question every witness

6   called by the government and questioned by the government

7   attorney first.  Yours is the right of cross-examination.  You

8   would have no duty to present evidence, to call witnesses, or

9   to prove anything at the trial.  However, if you have witnesses

10  that you wished to call in your defense who were unwilling to

11  attend the trial, at your request the Court would issue

12  subpoenas to order your witnesses to attend the trial.

13          Do you understand your confrontation rights as I've

14  just explained them?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you willing to give them up?

17          THE DEFENDANT:  Yes.

18          THE COURT:  You have a privilege against

19  self-incrimination.  This is the right to remain silent, to not

20  testify, to rely on the presumption of innocence and to have

21  the jury instructed but they could not hold it against you in

22  any way if you exercised your privilege against self-

23  incrimination nor could they draw an adverse inference against

24  you for exercising that privilege.

25          Do you understand your privilege against self-

1   incrimination as just explained?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Are you willing to give it up?

4           THE DEFENDANT:  Yes.

5           THE COURT:  How do you plead to the superseding

6   information which charges you with six counts of money

7   laundering, each a felony; guilty as to all six counts or not

8   guilty as to six counts?

9           THE DEFENDANT:  Guilty.

10          THE COURT:  And do you admit that the facts that

11  prove the right to the government's forfeiture have been

12  established by a preponderance of the evidence and that the

13  property which you've admitted was either money laundering

14  proceeds or the proceeds of criminal activity entitling the

15  government to forfeiture of that property as it was

16  specifically listed for you and is listed in writing in the

17  plea agreement.

18          Do you admit that that should now be forfeited to the

19  United States?  Admit or denied?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Admit or denied?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Your choices are either to admit the

24  forfeiture or to deny that the property should be forfeiture.

25  Do you admit or do you deny?

23

1          THE DEFENDANT:  I admit.

2          THE COURT:  It is the finding of the Court that the

3   defendant, Abdulla Kasem Ahmed Muthana is fully capable of

4   entering in informed pleas of guilty and admission of

5   forfeiture, that his, pleas of guilty, all six of them and his

6   admission of forfeiture are knowing and voluntary.  They're

7   supported by independent facts that establish all essential

8   elements of the offenses and the right to forfeiture your pleas

9   of guilty and admission of forfeiture of property are now

10  accepted.  You are judged guilty of these crimes.  I refer your

11  case to the probation officer for report and recommendation as

12  to sentence and order that you return to this Court --

13          THE CLERK:  February 4th.

14          THE COURT:  -- February 4th, 2007.  Thank you so

15  much.  2008.

16          THE DEFENDANT:  8.

17          THE COURT:  You want the morning or afternoon?

18          MR. IRIGOYEN:  Afternoon.

19          THE COURT:  1:30 p.m.  Anything further today?

20          MR. BOONE:  No, Your Honor.  Thank you.

21          THE COURT:  You're welcome.  We are in recess.  Thank

22  you. Alice.

23      (Whereupon the hearing in the above-entitled matter was

24  adjourned at 12:41 p.m.)

25                         --o0o--

24

1                         CERTIFICATE

2        I certify that the foregoing is a correct transcript from

3    the electronic sound recording of the proceedings in the above-

4    entitled matter.

5

6    _____        February 14, 2011

7    Patricia A. Petrilla, Transcriber

8    AAERT CERT*D-113

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25